COMMONWEALTH of Kentucky, CORRECTIONS CABINET, Appellant,

v.

Jerry RAMSEY, Appellee.

No. 90–CA–1849–DG.

Court of Appeals of Kentucky.

Dec. 6, 1991.

Discretionary Review Denied by Supreme Court May 28, 1992.

Suzanne D. Cordery, Frankfort, for appellant.

William H. Eddy, Dept. of Public Advocacy, Eddyville, for appellee.

Before CLAYTON, McDONALD and MILLER, JJ.

McDONALD, Judge.

This case is before us on discretionary review. The District Court ruled adversely to the Kentucky Corrections Cabinet and its ruling on appeal to the Lyon Circuit Court was affirmed.

Both of the courts prior to this review ruled that Jerry Ramsey, an inmate in the Kentucky penal system, was entitled to a Kentucky Governor's Warrant before being given up to the State of Indiana, the demanding jurisdiction.

On September 28, 1989, the State of Indiana made a demand for temporary custody of Jerry Ramsey under Article 4 of the Interstate Agreement on Detainers, codified in Kentucky under KRS 440.450, and referred to throughout as IAD.[1]

The record shows that Ramsey had outstanding Indiana felony charges against him. The demand made for him was in writing, signed by both the prosecuting attorney and the trial judge of the First Judicial District of Indiana. The demand was for temporary custody purposes to dispose of the outstanding felony charges.

On October 11, 1989, Ramsey was notified that a detainer had been filed but there were no signatures affixed on it. Ramsey declined to waive extradition to Indiana.

On November 14, 1989, the Cabinet moved to intervene in this matter, and on December 22, 1989, the Lyon District Court heard the case. The District Court found the following:

1) that Kentucky and Indiana were parties not only to the IAD but were also parties to the Uniform Criminal Extradition Act, codified in Kentucky under KRS 440.-150, *et. seq.*, and referred to herein as the UCEA;[2]

2) that the IAD does not require a Governor's Warrant for transferring a prisoner, but that the UCEA does require such a warrant under KRS 440.170 and specifically, KRS 440.220;

3) that Ramsey, under the Supreme Court of the United States' authority of *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), was entitled to the protection of both the UCEA and IAD, so therefore, a Kentucky Governor's Warrant was required.

On appeal the circuit court affirmed the district court, and in its opinion correctly determined that there are two ways a receiving state could get custody of an inmate across state lines; one method was through the UCEA, the traditional method; the other way was pursuant to IAD. The circuit court's opinion also declared that extradition was purely an executive function.

In affirming the district court, the circuit court cited *Cuyler, supra,* to the following extent:

We conclude as a matter of federal law prisoners transferred pursuant to the provisions of the [IAD] are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to the receiving state.

The issue then is, what pre-existing rights did Ramsey have before the adoption of the IAD, which existed under the UCEA and the federal Constitution?

1. The IAD only applies to prisoners of the Kentucky Penal System.

2. The UCEA applies to all persons subject to being transferred across state lines to be prosecuted.

Ramsey argues that he was entitled to be transferred only upon a Kentucky Governor's Warrant, and that such a right comes to him directly from the United States Constitution, Art. IV, § 2, cl. 2, as a constitutional right, and that he is entitled to a hearing before being transferred. *Cuyler, supra*, is the fundamental authority dealing with the rights of a fugitive such as Jerry Ramsey. In *Cuyler*, the Supreme Court concluded that a federal question was involved because the states involved had entered into a compact. That is the same circumstance we have in the case before us, in that Kentucky and Indiana are parties to the IAD. The Supreme Court said:

> The Compact Clause of the United States Constitution, Art I, § 10, cl 3, provides that "No State shall, without the Consent of the Congress, ... enter into any Agreement or Compact with another State...." Because congressional consent transforms an interstate compact within this Clause into a law of the United States, we have held that the construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question.

[1b] The Detainer Agreement [IAD] and the Extradition Act [UCEA] both establish procedures for the transfer of a prisoner in one jurisdiction to the temporary custody of another jurisdiction. A prisoner transferred under the Extradition Act is explicitly granted a right to a pretransfer "hearing" at which he is informed of the receiving State's request for custody, his right to counsel, and his right to apply for a writ of habeas corpus challenging the custody request. He is also permitted "a reasonable time" in which to apply for the writ. However, no similar explicit provision is to be found in the Detainer Agreement [IAD].

■ Chronologically, the UCEA was enacted prior to the IAD. Again, both states were parties to the compact. While the IAD granted no pretransfer hearing, the UCEA does under KRS 440.250. *Cuyler* was explicit in this regard:

> [Ramsey] is thus entitled to assert any right he might have had under the Extra-

dition Act [UCEA] (or any other state law applicable to interstate transfer of prisoners) to challenge his transfer.

. . . .

In light of the purpose of the Detainer Agreement [IAD] as reflected in the structure of the Agreement, its language, and its legislative history, we conclude as a matter of federal law that prisoners transferred pursuant to the provisions of the Agreement are not required to forfeit any pre-existing rights they have under state or federal law to challenge their transfer to the receiving state.

Inasmuch as Ramsey had a pre-existing right by way of the UCEA for a pretransfer hearing, it is concluded that that right would remain and does under the IAD, Article IV, § 4 of KRS 440.450.

Next, under federal law, is a Kentucky Governor's Warrant required to be executed upon the demand of Ramsey as a matter of right that he possesses? The answer is no.

■ The purpose of the Extradition Clause of the federal Constitution is to implement a duty upon a state to deliver up a fugitive to a demanding state. The Clause inherently has concepts of full faith and credit and comity within it so as to facilitate national unity and smooth functioning of the criminal justice system. *See* 31A Am.Jur.2d, § 4.

However, a detainee of a state can claim no right under the Clause. *Sami v. United States*, 617 F.2d 755, 774 (1979), explains,

> The Constitution's extradition provision, U.S. Const. art. IV, § 2, cl. 2, applies only to interstate extradition.... Moreover, the traditional reading of the constitutional provision has been that it confers no rights on the individual being sought.

Therefore, we feel comfortable in concluding that there is no constitutional right to a Kentucky Governor's Warrant from the standpoint of the person being sought in the asylum state.

Lastly, however, we must determine whether Ramsey was denied any right cre-

ated by Kentucky law because *Cuyler* preserved any such pre-existing right. KRS 440.330 states that a detainee may be surrendered to the demanding state upon "demand of the executive authority of another state."

■ KRS 440.160 defines "executive authority" by stating that the term includes the governor, or "any person performing the functions of governor in a state other than this state." The definition is not limited to the governor alone, but more adequately describes the executive branch of government. Herein, the demand is made by the prosecutor [the appropriate officer] of the jurisdiction of the state of Indiana. The prosecutor's capacity upon the demand of Ramsey satisfies the "executive authority" requirement and, in addition, the court has approved the request by the signing of the judge. This procedure complies with KRS 440.160 under the UCEA but, more importantly, complies with the IAD, Article IV, § (1) of KRS 440.450.

■ Therefore, from the perspective of the State of Indiana making a proper demand for Ramsey, we see no defect. However, there is no question that KRS 440.220 creates a pre-existing right under the UCEA that we must struggle with for final resolution. The statute specifically states that "If the governor decides that the demand should be complied with, he shall sign a warrant of arrest...." That was not done in this case; and that was a pre-existing right that Ramsey possessed under the UCEA but was not retained under the IAD.

We resolve the issue by pointing out that the IAD extinguished the pre-existing right of the Kentucky Governor's Warrant. Article IV, § (4) of KRS 440.450 plainly states, "... but such delivery [of the person] may not be opposed or denied on the ground that the executive authority of the sending state [Kentucky] has not affirmatively consented to or ordered such delivery." Therefore, the provision of the IAD negated the right to the Kentucky Governor's Warrant as a pre-existing right.

Our reading of *Cuyler* approves of the elimination of this pre-existing right with the following language at 66 L.Ed.2d 653:

Second, ... that the transfer has not been affirmatively approved by the Governor—

is a ground that the Extradition Act expressly reserves to the prisoner. It is surely reasonable to conclude from the elimination of this ground in the Detainer Agreement that the drafters meant the Detainer Agreement to be read as not affecting any rights given prisoners by the Extradition Act that are not expressly withheld by the Detainer Agreement. As the Court of Appeals concluded, "the fact that Article IV(d) does specifically refer to one minor procedural feature of the extradition process which is to be affected suggests forcefully that the other aspects, particularly those furnishing safeguards to the prisoner, are to continue in effect."

The interpretation of *Cuyler* offered by the appellee and expressed in *Housewright v. Lefrak*, 99 Nev. 684, 669 P.2d 711 (1983), that all the procedures required under the UCEA must also be utilized when a prisoner sought under the IAD refuses to waive extradition, is untenable. The IAD, which provides for temporary custody of an inmate, would be rendered a nullity except in those cases initiated by an inmate under Article III, if states were required to comply with all the provisions of the extradition act.

For the reasons stated in this opinion, the Circuit and District Courts of Lyon County are reversed.

All concur.